# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **BRENT J CAUBARREAUX** | **CASE NO. 6:18-CV-01302** |
| **VERSUS** | **JUDGE JUNEAU** |
| **SIERRA ENGINEERING LLC ET AL** | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

Currently pending is the motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(5), and/or (b)(6), filed by the defendants, Sierra Engineering, LLC ("Sierra") and Zurich North American Insurance Company ("Zurich") (collectively, "the defendants"). [Rec. Doc. 10]. *Pro se* plaintiff, Brent J. Caubarreaux, opposes the motion. [Rec. Doc. 16]. The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. Considering the record, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion be GRANTED, under Federal Rule of Civil Procedure 12(b)(1), and the plaintiff's claims be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

## BACKGROUND

On October 1, 2018, *pro se* plaintiff, Brent J. Caubarreaux, filed a complaint "seeking to establish claim for permanent disability, pain and suffering, punitive damages and financial losses;" invoked this Court's jurisdiction pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901, *et seq*; and further alleged that the Jones Act, specifically 46 U.S.C. § 30104, "allows injured workers to make claims . . . and obtain damages from employers for negligence."[1] The original complaint named only Sierra and Zurich as defendants.[2] Mr. Caubarreaux requested a trial by jury and alleged that this action was "commenced within the appropriate time period set forth in the Jones Act and . . . in the Action of Appeals Council on requests for Review, pursuant to interim acceptance of recommendation on the third of May, 2018, Office of Workers' Compensation Programs, Division of Longshore and Harbor Worker[s'] Compensation."[3] He offers no other facts regarding his alleged injury, the circumstances of his employment, the identity of his employer, or his employer's alleged negligence.

[1] Rec. Doc 1, p. 1. Section 30104 provides: "A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer."
[2] Zurich North American Insurance Company was incorrectly named as "Zurich North America." *See* Rec. Doc. 10.
[3] Rec. Doc 1, p. 1. Hereinafter, the U.S. Department of Labor's Office of Workers' Compensation Programs will be referred to as "the OWCP."

On October 25, 2018, Mr. Caubarreaux amended his complaint to name Eversheds Sutherland (US) LLP;[4] Doffermyre, Shields, Canfield & Knowles, L.L.C.;[5] Elizabeth Lester; and Yahoo.[6] In all other respects, the amended complaint is identical to the original complaint. Neither pleading contains any factual or legal allegations beyond those recited above.

The defendants acknowledge that "[i]t is undisputed that [Mr. Caubarreaux] was injured in the course and scope of his employment while working for [Sierra]."[7] In light of the reference within the pleadings to both the LHWCA and the OWCP's May 3, 2018 recommendation, the defendants have assumed, for purposes of the instant motion, that Mr. Caubarreaux's complaint references injuries arising out of an October 8, 2014 work injury, in support of which they have attached a copy of the referenced OWCP recommendation. Through the defendants' memorandum in support of the instant motion and attachments thereto, this Court has gleaned the following facts, which were not disputed in Mr. Caubarreaux's response, and which

---

[4] Mr. Caubarreaux named Sutherland Asbill & Brennan; however, a later appearance by the intended party corrected the record to reflect that the party should be identified as Eversheds Sutherland (US) LLP, formerly known as Sutherland Asbill & Brennan LLP (hereinafter "Eversheds Sutherland"). *See* Rec. Doc. 23.

[5] Mr. Caubarreaux named Doffermyre Shields Canfield; however, a later appearance by this party corrected the record to reflect that the party should be identified as Doffermyre, Shields, Canfield & Knowles, L.L.C. *See* Rec. Doc. 30.

[6] Rec. Doc. 6.

[7] Rec. Doc. 10-1, p. 6.

may be considered in determining whether this Court has jurisdiction over this matter.[8]

Mr. Caubarreaux was hired by Sierra on or about July 16, 2014, as a mud engineer/independent consultant.[9] According to the "Employee's Claim for Compensation," which Mr. Caubarreaux filed with the OWCP on April 1, 2015 ("OWCP Claim"), and which the defendants attach to the instant motion, Mr. Caubarreaux was injured on October 8, 2014, while doing regular work as a "Consultant Mud Engineer."[10] Mr. Caubarreaux claimed to have sustained an injury to his right knee, while working on a platform on the Outer Continental Shelf, OCS-G33657, Well 1, South Timbalier 125.[11] In the OWCP Claim, the nature of the injury is described as "right knee – pain in joint – tear of medial meniscus – acute;" "right leg - deep vein thrombosis of right lower extremity;" and "lower back – pain - difficulty getting out of bed, off table, [and] bending."[12] According to the OWCP Claim, Mr. Caubarreaux has received workers' compensation, wage loss, and disability payments weekly, since the accident.[13] The defendants confirm that, as a result of Mr. Caubarreaux's work-related incident on October 8, 2014, and pursuant

---

[8] *See* fn 27, *infra* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).
[9] Rec. Doc. 10-1, p. 3.
[10] Rec. Doc. 10-3.
[11] Rec. Docs. 10-1, p. 3 and 10-3.
[12] Rec. Doc. 10-3, p. 1.
[13] Rec. Doc. 10-3, p. 2.

to 43 U.S.C. § 1333(b), "compensation and medical benefits under the LHWCA were initiated by Defendants on or about October 9, 2014, and continue to date."[14]

As mentioned above, in addition to invoking this Court's jurisdiction under the LHWCA, Mr. Caubarreaux alleges that this action was "commenced within the appropriate time period set forth in the Jones Act and . . . in the Action of Appeals Council on requests for Review, pursuant to interim acceptance of recommendation on the third of May, 2018, [OWCP], Division of Longshore and Harbor Worker[s'] Compensation."[15] Based on this language, the defendants "assume Plaintiff is seeking to appeal a recommendation made by the U.S. Department of Labor regarding his claim under the LHWCA[,]" as indicated in an OWCP "Memorandum of Informal Conference," (hereinafter, "OWCP Memo") also attached to the instant motion.[16]

The OWCP Memo indicates that an OWCP claims examiner conducted telephone conferences with both the plaintiff and a representative of the defendants,

---

[14] Rec. Doc. 10-1, p. 3. As noted by the defendants, the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(b), extends the provisions of the LHWCA, to compensate, *inter alia*, non-seamen who are injured through certain operations occurring on the Outer Continental Shelf. *See also Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir. 1980).
[15] Rec. Doc 1, p. 1.
[16] Rec. Docs. 10-1, p. 4 and 10-4 (OWCP Memo). Although the OWCP Memo spells the claimant's name "Cabarreaux," rather than "Caubarreaux," it reflects the referenced date of May 3, 2018, the employer as Sierra, the insurance carrier as Zurich, and indicates an address for the "claimant" that matches the address listed in this docket for the plaintiff. Furthermore, the OWCP File Number and facts reflected therein match those contained in the OWCP Claim filed by Mr. Caubarreaux. *See* Rec. Doc. 10-3.

summarized their respective positions within the OWCP Memo and made a recommendation regarding suspension of benefits. It was recommended that "[a]n [o]rder suspending indemnity benefits is not proper at this time as claimant is still totally disabled from work."[17] The OWCP Memo goes on to state that "[t]here is no medical evidence . . . to support claimant's arguments that his DVT [blood clot] was caused or aggravated by his work injury," and indicates what evidence would be required of the claimant to support such a claim. At the conclusion of the recommendation, the OWCP Memo states "[i]f after (21) days there is no response from the parties, it is assumed that the recommendation is accepted."[18] Included in the OWCP Memo are detailed instructions regarding the realm of possible actions to be taken by the parties.[19] There is no indication that any action was taken thereafter; however, in his pleadings and in response to the instant motion, the plaintiff explicitly indicates his own "interim acceptance" of the recommendation.[20]

The instant motion was filed by the defendants on November 6, 2018, seeking dismissal of both the original and amended complaints, pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(5), and/or (b)(6). First, the defendants argue that this Court lacks jurisdiction, because the plaintiff does not meet the requirements for

---

[17] Rec. Doc. 10-4, p. 2.
[18] *Id.*
[19] *Id.* at p. 3.
[20] *See* Rec. Docs. 1; 6; and 16, p. 3.

seaman status under the Jones Act. Second, the defendants contend that this Court lacks jurisdiction because the plaintiff has already asserted a cause of action under the LHWCA, continues to receive benefits pursuant thereto, and LHWCA and Jones Act are mutually exclusive remedies. Third, the defendants assert that the plaintiff's claim under the Jones Act and/or general maritime law has prescribed. Fourth, the defendants allege that the plaintiff has failed to effect proper service on the defendants and has no right to a direct action against Zurich. Fifth, and alternatively, the defendants argue that the plaintiff has failed to plead sufficient facts necessary to state a claim against the defendants.

In response to the instant motion, Mr. Caubarreaux states that jurisdiction is predicated on the Jones Act, because he "was working, within three nautical miles, during time of injury" and further states that "[t]he jack up drilling rig crossed the state boundary line, into Federal waters."[21] He also makes the following allegations: "Sierra subjected Plaintiff to excessive stair climbing and failed to notify Plaintiff of 'rigging down crane activity.' Plaintiff had no previous injury to knee or wrist; yet was coerced into signing an accident report, unaware of accident report content."[22] However, despite invoking the Jones Act, he also repeats the reference to his

---

[21] Rec. Doc. 16, p. 1. This Court assumes the references to "three nautical miles" and "Federal waters," was intended to convey that the plaintiff was in federal, rather than state, jurisdiction at the time of his injury. *Cf. Alaska v. United States*, 545 U.S. 75, 78–79 (2005), *judgment entered*, 546 U.S. 413 (2006) ("States enjoy a presumption of title to submerged lands . . . beneath territorial waters within three nautical miles of their coasts.").

[22] Rec. Doc. 16, p. 3.

"interim acceptance of [the] recommendation" in the OWCP Memo, which he alleges is an "exhausted remedy."[23] He further claims that the "[d]efendants have been attempting unfair termination of benefits; and, unfair medical disclosure."[24] Thus, construing his pleadings and response liberally, it is apparent that this case does indeed arise out of the October 8, 2014 work injury and the related proceedings within the OWCP, as assumed by the defendants.

## LAW AND ANALYSIS

### I.    STANDARD FOR RESOLVING A RULE 12(B)(1) MOTION TO DISMISS

Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3) require a court to dismiss claims over which the court lacks subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[25] The plaintiff has the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction.[26] A lack of subject matter jurisdiction may be found based on the content of the complaint alone, the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts plus the court's

---

[23] Rec. Doc. 16, p. 3.
[24] Rec. Doc. 16, p. 3.
[25] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)).
[26] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 487 (5th Cir. 2014).

resolution of disputed facts.[27] However, in resolving a motion to dismiss for lack of subject-matter jurisdiction, the court must accept all factual allegations in the plaintiff's complaint as true.[28]

## II.  THE COURT LACKS SUBJECT MATTER JURISDICTION

This Court notes, again, at the outset that the plaintiff is proceeding *pro se*, so his pleadings and opposition to the instant motion must be construed liberally.[29] "Nonetheless, the principle of liberal construction does not immunize *pro se* plaintiffs from adverse rulings and it does not transform the Court into the plaintiff's advocate."[30] "Further, the principle of liberal construction does not eviscerate a defendant's right to raise meritorious defenses . . . and to have them decided via motion practice."[31]

"Generally, . . . a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed[,]" unless the plaintiff has already pleaded his "best case."[32] Here, in response to the defendants' motion to dismiss on various legal

---

[27] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[28] *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

[29] *Payton v. Dyncorp Int'l*, No. 10-1014, 2011 WL 2669254, at *1 n.3 (E.D. La. July 7, 2011); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'") (internal citations omitted).

[30] *Id*. (citing *Willie v. Bradley*, No. 05–10, 2008 WL 1990775, at *15 (N.D. Miss. Feb. 12, 2008)).

[31] *Id*.

[32] *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)).

grounds, the plaintiff has neither moved for leave to file a second amended complaint nor come forward with facts which might establish this Court's subject matter jurisdiction. Having considered the pleadings, the defendants' motion, and the plaintiff's opposition thereto, this Court finds that amendment would be futile, for purposes of Rule 12(b)(1), for the reasons explained herein.

Again, the plaintiff's pleadings invoke both the LHWCA and the Jones Act, yet "[i]t is well-settled that the Jones Act and the LHWCA are 'mutually exclusive compensation regimes.'"[33] "An injured maritime worker may be entitled to compensation under one regime or the other, but he is not entitled to both."[34]

In his response to the instant motion, the plaintiff cites *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995), in which the United States Supreme Court established a two-prong test by which to determine whether an employee qualifies as a "seaman," and is therefore entitled to the protections of the Jones Act. "First, 'an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission.'"[35] "Second, 'a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature.'"[36] *Chandris*'s second prong serves to narrow down the broad

---

[33] *Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003), as revised (July 24, 2003) (quoting *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 553 (1997)).
[34] *Jones v. Stayner*, No. 05-1632, 2006 WL 1831527, at *3 (W.D. La. June 28, 2006).
[35] *Becker*, 335 F.3d at 387 (quoting *Chandris*, 515 U.S. at 368) (internal citations and quotation marks omitted)).
[36] *Id*.

category of maritime employees who are "doing the ship's work," to those who "are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment-related connection to a vessel in navigation."[37]

The "fundamental purpose" of the second prong's "substantial connection requirement is to . . . separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea."[38] Indeed, the Supreme Court has made it abundantly clear that "the Jones Act and the LHWCA are mutually exclusive compensation regimes: '"master or member of a crew" is a refinement of the term "seaman" in the Jones Act; it excludes from LHWCA coverage those properly covered under the Jones Act.'"[39] Thus, as the Fifth Circuit has stated, "if plaintiff satisfies the criteria for being a seaman, he is covered by the Jones Act and not the LHWCA; if he does not, he is protected only by the LHWCA."[40]

Here, it is undisputed that this case arises out of his October 8, 2014 work-related injury for which he has been receiving payments under the LHWCA.[41] As

---

[37] *Chandris*, 515 U.S. at 369 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991)).

[38] *Chandris*, 515 U.S. at 368.

[39] *Chandris*, 515 U.S. at 355–56 (quoting *Wilander*, 498 U.S. at 347); *see also Becker*, 335 F.3d at 386 ("It is well-settled that the Jones Act and the LHWCA are 'mutually exclusive compensation regimes.'").

[40] *Becker*, 335 F.3d at 386.

[41] *See* Rec. Docs. 10-1, p. 3 and 10-3, p. 2.

noted by the defendants and recognized above, an invocation of seaman status and entitlement to Jones Act benefits is inconsistent with a claim for LHWCA benefits.[42] Importantly, however, "the mere acceptance of [LHWCA] benefits without a formal adjudication of seaman status will not preclude a subsequent Jones Act suit[.]"[43] Yet, despite citing the correct Supreme Court law, the plaintiff alleges no facts which might support a finding of seaman status necessary to proceed under the Jones Act.[44] Again construing the plaintiff's *pro se* filings liberally, no fact even suggests that the plaintiff was a member of a ship's crew or that he had the requisite employment-related connection to a vessel in navigation, required for entitlement to Jones Act benefits. Given that the plaintiff bears the burden of proving jurisdiction in order to survive a motion to dismiss,[45] he has failed to establish that this case involves a claim arising under the Jones Act.

Instead, Mr. Caubarreaux initiated the instant lawsuit either in response to, or in an attempt to appeal, the OWCP's May 3, 2018 recommendation. However, this

---

[42] *See Jones*, *supra*, 2006 WL 1831527.

[43] *Simms v. Valley Line Co.*, 709 F.2d 409, 412 (5th Cir. 1983).

[44] This Court further notes, for the benefit of the *pro se* plaintiff, that "the LHCWA's statute of limitations is one year, 33 U.S.C § 913(a), and the Jones Act's statute of limitations is three years, 46 U.S.C. § 30106." *Rondeno v. M/V Island Oasis*, 487 F. App'x 147, 148 (5th Cir. 2012); *see also Wilson v. Zapata Off-Shore Co*., 939 F.2d 260, 266 (5th Cir. 1991). In *Rondeno*, the Fifth Circuit upheld a district court's dismissal of a *pro se* plaintiff's claims as time-barred under either statute. *See Rondeno v. M/V Island Oasis, et al*, Docket No. 4:11-cv-04028 (S.D. Tex. Dec. 30, 2011) (opinion on dismissal) (Hughes, J.). Here, this Court notes the potential applicability of the Jones Act's statute of limitations, as argued by the defendants, but does not reach the issue of timeliness herein.

[45] *Paterson*, 644 F.2d at 523; *Alabama-Coushatta Tribe,* 757 F.3d at 487.

Court lacks original jurisdiction over such an action, given that "Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, [which] are to be exclusive[.]"[46] In general, as the Fifth Circuit explained in *Ceres Gulf v. Cooper*,

> [T]hrough the LHWCA[,] Congress has provided a detailed scheme for presentation, payment, adjudication and review of claims covered by the LHWCA. Among other things, it empowers the deputy commissioner to order a hearing before an ALJ, § 919(c), and authorizes appeals of claim determinations to the [Benefits Review Board], § 921(b), with review of its orders in a court of appeals, § 921(c).[47]

Although, under § 921(d) of the LHWCA, the district courts have authority to enforce a compensation order making an award, such authority only arises once the award "has become final."[48] Here, there is no allegation of a "final" compensation order which the plaintiff might seek to enforce.[49] In addition, the plaintiff's response to the instant motion belies any argument that there may be a final, appealable order, given his statements that the "[d]efendants have been *attempting* unfair termination

---

[46] *Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co*., 379 U.S. 411, 420 (1965); *see also Ceres Gulf v. Cooper*, 957 F.2d 1199, 1208 (5th Cir. 1992) ("[T]he LHWCA is the only potential source for federal court jurisdiction . . . § 1331 jurisdiction is unavailable where, as here, Congress has created a specific, statutorily-defined scheme that clearly supplants the general jurisdictional statute."); 33 U.S.C. § 921(e) ("Proceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, shall not be instituted otherwise than as provided in this section and section 918 of this title.").

[47] *Ceres Gulf*, 957 F.2d at 1208.

[48] 33 U.S.C. § 921(d).

[49] *See Connors v. Amax Coal Co*., 674 F. Supp. 22 (S.D. Ind. 1987), *aff'd*, 858 F.2d 1226 (7th Cir. 1988).

of benefits; and, unfair medical disclosure."[50] Indeed, the language of the OWCP Memo and recommendation indicates that the plaintiff's employer sought and was *denied* "[a]n [o]rder suspending indemnity benefits . . . as claimant is still totally disabled from work."[51] On the record before this Court, the plaintiff has failed to establish compliance with the exclusive statutory scheme outlined in the LHWCA; therefore, this Court lacks jurisdiction over the plaintiff's LHWCA claim.[52]

Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[53] "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice."[54] "The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction."[55] Indeed, "[f]or a court to pronounce upon [the merits] when it has no jurisdiction to do so is, by very

---

[50] Rec. Doc. 16, p. 3 (emphasis added).
[51] Rec. Doc. 10-4, p. 2.
[52] *See, e.g., Voight v. R.L. Eldridge Const. Inc.,* 422 F. Supp. 2d 742, 748 (E.D. Tex. 2006) ("Voight does not seek here to enforce an administrative compensation order. . . This court lacks jurisdiction to adjudicate th[e] claim."); *Jones, supra,* 2006 WL 1831527, at *3 ("Thus, federal trial courts lack original subject-matter jurisdiction to resolve claims under the LHWCA.") (quoting *Voight,* 422 F. Supp. 2d at 747-48).
[53] *Ramming,* 281 F.3d at 161; *Alabama-Coushatta Tribe,* 757 F.3d at 487.
[54] *Valentine v. L & L Sandblasting, Inc. Corp.,* No. 6:15-2905, 2016 WL 5724970, at *2 (W.D. La. May 9, 2016), *report and recommendation adopted,* No. 6:15-2905, 2016 WL 5794551 (W.D. La. Sept. 30, 2016) (citing *Ramming,* 281 F.3d at 161).
[55] *Id.*

definition, for a court to act ultra vires."[56] "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."[57] Accordingly, this Court recommends dismissal, without prejudice, for lack of subject matter jurisdiction and pretermits analysis of any alternative bases for dismissal.

## CONCLUSION

For the foregoing reasons, this Court recommends that the motion to dismiss (Rec. Doc. 10) be GRANTED for lack of subject matter jurisdiction and further recommends that the plaintiff's claims, as asserted in both the complaint and amended complaint, be dismissed without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

---

[56] *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101–02 (1998).
[57] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[58]

      Signed at Lafayette, Louisiana on December 18, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[58] *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).